UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-22554-Civ-COOKE/BANDSTRA

RAFAEL MORALES,

    Plaintiff

vs.

MERCO GROUP, INC., *et al.*,
_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL

THIS MATTER is before me on the Plaintiff's Motion For New Trial. (ECF No. 103). I have reviewed the parties' arguments, the record, and the relevant legal authorities. For the reasons explained in this Order, the Plaintiff's Motion is denied.

### I. BACKGROUND

This is an employment retaliation action against Defendants Merco Group, Inc. and Merco Group at MGI Hotels, LLC (formerly Merco Group at GB Hotel, LC). The Grand Bay Hotel employed Plaintiff, Rafael Morales, as a general cashier and income auditor. Mr. Morales alleged that because he complained to Ms. Sylvia Zafrilla, Human Resources Coordinator, that he was being treated differently because of his age, Defendants retaliated against him and terminated his employment. Defendant Merco Group, Inc. maintained that it was merely a management company, and not a proper party to this lawsuit. Defendant Merco Group at MGI Hotels, LLC contended that it terminated Mr. Morales because of his poor work performance, not his age.

A three-day jury trial was held between February 4 and 8, 2011. The jury found, by a preponderance of the evidence, that (i) Merco Group, Inc. did not jointly employ Mr. Morales;

and (ii) Mr. Morales did not engage in statutorily protected activity, i.e., he did not in good faith assert objectively reasonable claims or complaints of discrimination prohibited by federal law. Plaintiff moves for a new trial on two grounds. First, Plaintiff argues that the verdict was against the manifest weight of the evidence. Second, Plaintiff argues that juror misconduct in the form of non-disclosure of prior litigation history warrants a new trial. I will review each argument in turn.

## II. LEGAL STANDARDS

A district court may grant a new trial "for any reason for which a new trial has heretofore been granted in actions at law in federal court . . .." Fed. R. Civ. P. 59(a)(1)(A). "A judge should grant a motion for a new trial when the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Lipphardt v. Durango Steakhouse of Brandon, Inc.,* 267 F.3d 1183, 1186 (11th Cir. 2001) (internal quotation marks omitted). "[I]n a motion for new trial the judge is free to weigh the evidence." *Rosenfield v. Wellington Leisure Prods, Inc*., 827 F.2d 1493, 1498 (11th Cir. 1997). "The trial judge should view not only that evidence favoring the jury verdict, but evidence in favor of the moving party as well." *Id*. However, the judge "should not substitute his own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury." *Id.* Finally, "[b]ecause it is critical that a judge does not merely substitute his judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great-not merely the greater- weight of the evidence." *Lipphardt,* 267 F.3d at 1186 (internal quotation marks omitted).

### III. ANALYSIS

**A.     The Verdict was not Against the Clear Weight of the Evidence**

Mr. Morales first contends that the jury's verdict was against the clear weight of the evidence because "the record was clear" that Merco Group, Inc. employed him. Mr. Morales states that "wage forms" showed he worked for Merco Group, Inc. Indeed, Mr. Morales testified that his pay stubs, which were admitted into evidence, indicated that Merco Group, Inc. was his employer. However, Mr. Morales's IRS W-2 forms and his signed tax return indicated that his employer was Merco Group at GB Hotel, LC. Additionally, Mr. Mark Alvarez, former general manager of the Grand Bay Hotel, testified that Merco Group, Inc. was only a management consulting organization that had no direct relationship to the hotel.

The jury was free to weigh the evidence and make credibility determinations. The W-2 form and signed tax return reflecting information provided to the U.S. Internal Revenue Service conflicted with the payroll stubs generated by a private processing company, ADP. Mr. Alvarez's testimony further corroborated the evidence that Merco Group, Inc. was not Mr. Morales's employer. The jury could reasonably determine that the information contained on the W-2 form and the signed tax return, which witness testimony further corroborated, was more credible and reliable than the payroll stubs. The jury's verdict—that Merco Group, Inc. did not employ Mr. Morales—was not against the great weight of the evidence.

Mr. Morales next argues that he gave uncontested testimony about his complaints to Ms. Zafrilla that Mr. Jason Cherian, his supervisor, was treating him differently because of his age. Mr. Morales argues that, since he gave undisputed testimony that he complained about the disparate treatment to Human Resources, the jury's finding—that he did not in good faith assert

3

objectively reasonable complaints of discrimination—was against the great weight of the evidence.

Ms. Zafrilla's testimony, however, did conflict with Mr. Morales's account. Plaintiff's counsel asked Ms. Zafrilla at least three times whether Mr. Morales complained to her that Mr. Cherian treated him differently than younger employees. Ms. Zafrilla consistently responded that she did not recall him ever making such a complaint. When Plaintiff's counsel asked her, at least twice, whether it was *possible* that Mr. Morales complained to her that Mr. Cherian treated him differently than younger employees, she reiterated that she did not recall such a complaint and therefore could not answer whether it was possible. Ms. Zafrilla testified that she recalled Mr. Morales complaining that Mr. Cherian was reproaching him about his work performance. Ms. Zafrilla testified that at no point did she believe Mr. Morales was complaining about any type of discrimination.

Further, even if the evidence were uncontroverted that Mr. Morales complained about disparate treatment, the evidence proffered at trial indicated that such a complaint was not objectively reasonable. Mr. Morales testified generally that Mr. Cherian treated younger people, such as the interns, better than him. However, Mr. Morales never testified that Mr. Cherian made any specific statements or actions that would suggest animus based on age. Mr. Morales could not identify any instance in which age discrimination appeared to be the reason for Mr. Cherian's "unpleasant" disposition towards him. Rather, Mr. Morales testified that Mr. Cherian was generally "nasty" to him, and kept pushing him to work harder. Mr. Cherian, on the other hand, testified that Mr. Morales's poor work performance was the source of friction between the two men. By Mr. Morales's own account, it appears that his meetings with Mr. Cherian

4

concerned work performance issues. No other witness testified that Mr. Cherian discriminated against Mr. Morales because of his age.

The jury's verdict that Mr. Morales did not in good faith assert objectively reasonable complaints of discrimination was not against the great weight of the evidence. Ms. Zafrilla's testimony regarding the complaint conflicted with Mr. Morales's testimony. Mr. Cherian testified that the conflicts between he and Mr. Morales centered on Mr. Morales's work performance. Even Mr. Morales testified that Mr. Cherian constantly reproached him about his work performance. Such testimony was in line with Ms. Zafrilla's version of the events, i.e., Mr. Morales complained to her that Mr. Cherian was reproaching him about his work performance. The jury could reasonably have given more credit to Ms. Zafrilla's and Mr. Cherian's testimonies than to Mr. Morales's testimony, as he had a clear personal stake in the litigation. Additionally, there was no evidence, besides Mr. Morales's own seemingly subjective belief, that Mr. Cherian in fact treated him differently because of his age. Thus, the great weight of the evidence indicates that Mr. Morales did not assert an objectively reasonable claim or complaint of discrimination.

**B.      Jurors' Non-Disclosure of Prior Litigation does not Warrant New Trial**

Plaintiff argues that a new trial is warranted because three jurors—Cecilia Abreu, Javier Gadea, and Patrice Ottey—failed to disclose their involvement in prior litigation during *voir dire*. Plaintiff argues that correct responses from these jurors would have provided valid bases for challenges for cause.

To obtain a new trial based on a juror's failure to disclose information at *voir dire*, "a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a

5

challenge for cause." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984). "Actual bias may be shown in two ways: by express admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed." *United States v. Perkins*, 748 F.2d 1519, 1532 (11th Cir. 1984). "[I]nvolvement in prior similar litigation may . . . be evidence of bias." *Id*. at 1533. Additionally, a pending or final felony conviction is a valid basis for a challenge for cause. *Jackson v. State of Alabama State Tenure Comm'n*, 405 F.3d 1276, 1288 (11th Cir. 2005).

The first prong of the *McDonough* test requires a court to determine whether the juror's answers were honest, "that is, whether he was aware of the fact that his answers were false." *Perkins*, 748 F.2d at 1531. Here, it is unclear whether the jurors failed to properly disclose material information. Although Plaintiff provides copies of the Miami-Dade County Clerk of Court's Civil/Probate website indicating that a Cecilia Abreu, a Javier Gadea, and a Patrice Ottey were involved in certain proceedings, it is unclear whether this information actually pertains to these jurors or simply to other persons of the same name. Additionally, the website printouts are not official records. Plaintiff's own motion indicates his lack of certainty with respect to the jurors' *voir dire* responses—he states that the "pubic records of Miami-Dade County shows that three jurors were *potentially* dishonest with their responses." Pl. Mot. 9 (emphasis added). Plaintiff must show more than a mere possibility of a juror's dishonest answer to disturb a jury verdict and obtain a new trial.[1] *See generally McDonough Power Equip.*, 464 U.S. at 556.

---

[1] Plaintiff suggests that this Court should order an interview of the jurors to determine whether they were involved in these prior suits. Courts are "always reluctant to haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences." *United States v. Ianniello*, 866 F.2d 540, 543 (2d Cir. 1989) (internal quotations omitted). "[P]ost-verdict inquiries may lead to evil consequences: subjecting juries to harassment, inhibiting juryroom deliberation, burdening courts with meritless applications, increasing temptation for jury tampering and creating uncertainty in jury verdicts." *Id*. "To justify a post-trial hearing involving the trial's jurors, the defendant must do more than speculate; he must show 'clear, strong, substantial and incontrovertible

Plaintiff also fails to satisfy the second prong of the *McDonough* test. Even assuming that the records Plaintiff provides are correct, he fails to show actual bias. According to the records, Ms. Abreu may have been a party to a divorce, a contract dispute, a landlord tenant dispute, and three foreclosures; Mr. Gadea may have been involved in three foreclosures; and Ms. Ottey may have been involved in two debt collection actions. None of these matters consist of pending or final felony proceedings, and none are similar to Plaintiff's employment discrimination litigation.[2]

Moreover, this Court questioned all of the jurors—including Ms. Abreu, Mr. Gadea, and Ms. Ottey—on issues concerning their ability to be fair and impartial. This Court specifically asked Ms. Abreu whether she could think of any reason why she might not be a fair juror in this case. Ms. Abreu replied that she could not think of any reason. This Court asked the panel whether they understood that the plaintiff has the burden of proving his case by a preponderance of the evidence. The jurors at issue did not indicate they did not understand. This Court also asked the panel whether they would be able to apply the law as given to them, whether they agreed with it or not. None of the jurors at issue here expressed any concerns about this direction. Counsel for Plaintiff asked the panel whether any juror, based on their own personal experiences, might "start me or Mr. Morales a little behind on the score board even the smallest bit." None of the jurors in question stated that they would be unable to assess the evidence in an

---

evidence . . . that a specific, nonspeculative impropriety has occurred.'" *United States v. Cuthel*, 903 F.2d 1381, 1383 (11th Cir. 1990) (quoting *Ianniello*, 866 F.2d at 543). The records that Plaintiff provides may refer to a number of different persons of the same name as these jurors. I find that Plaintiffs claims are speculative, and the evidence presented does not rise to the requisite level as to necessitate a post-trial hearing.

[2] Plaintiff argues that a juror's experience with prior litigation can color that juror's ability to be impartial. Plaintiff notes that the Court struck two jurors—Dr. Vuong and Dr. Gomez—for that reason. The Court, however, did not strike the two jurors solely because of prior litigation. Rather, both jurors indicated that they would hold the plaintiff to a higher burden of proof than preponderance of the evidence. Dr. Gomez also appeared to be animatedly speaking to the juror next to him and seemed to be disagreeing with the other jurors.

impartial manner, or apply the preponderance-of-the-evidence standard. Counsel for Plaintiff also asked if any juror had a friend or family member who felt they were not treated fairly at work. None of the jurors at issue here had such an experience. Finally, counsel for Plaintiff asked whether any juror "may be in [their] heart leaning one way or the other before we start." None the jurors at issue expressed any such feelings.

The record indicates that the jurors were willing and able to be fair and impartial in this case. Plaintiff has failed to show any actual bias, either by express admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed. A new trial is unwarranted on the ground of juror misconduct.

### IV. CONCLUSION

For the reasons explained in this order, it is **ORDERED and ADJUDGED** that Plaintiff's Motion for New Trial is **DENIED**.

**DONE and ORDERED** in chambers, at Miami, Florida, this 22nd day of August 2011.

*Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Ted E. Bandstra, U.S. Magistrate Judge*
*Counsel of record*